```
                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ALABAMA
                           JASPER DIVISION
```

                                                    FILED
                                               01 FEB 28 AM 10:00
                                               U.S. DISTRICT COURT
                                                N.D. OF ALABAMA

FAYRENE PICKARD, on behalf of  }
herself and others similarly   }
situated,                      }
                               }
        Plaintiffs,            }
                               }    CIVIL ACTION NO.
v.                             }
                               }    00-AR-1519-J
STATE FARM MUTUAL AUTOMOBILE   }
INSURANCE COMPANY,             }                    ENTERED
                               }                   FEB 28 2001
        Defendant.             }

### MEMORANDUM OPINION

In this civil action, plaintiff, Fayrene Pickard ("Pickard"), has filed a putative class action on behalf of herself and others similarly situated to recover damages from and to enjoin defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), from unlawfully refusing to pay for medical care provided to Pickard and would-be class members through a process referred to as independent, third party "utilization review." Pickard alleges that State Farm has been unjustly enriched by acts which constitute breach of contract, bad faith, fraudulent misrepresentation and fraudulent suppression relating to State Farm's denial of a portion of charges for medical services provided to Pickard by Dr. R. Kevin Palmer ("Palmer"). The matter is now before the court on defendant's motion for summary judgment. For the reasons set forth in the opinion below, State Farm's motion will be granted and the

action will be dismissed, rendering moot Pickard's request for class certification under Rule 23, F.R.Civ.P.

### Pertinent and Undisputed Facts

On November 14, 1998, Pickard was injured in an automobile accident. She was covered by a State Farm insurance policy that provided benefits for the reasonable expenses for necessary medical treatment resulting from the accident, up to a limit of $5,000 per person. Pickard's policy also contained a "utilization review" provision, which allows State Farm to hire an "independent company" to analyze medical bills to help it determine whether a policyholder's course of treatment was reasonable and necessary.

On November 17, 1998, State Farm requested that Pickard return a medical authorization form regarding her medical treatments. During December 1998, and January through March 1999, State Farm received Pickard's medical records and bills from Palmer, a chiropractor in Haleyville, Alabama. From the medical records, State Farm determined that Pickard had sustained similar injuries in a 1987 automobile accident. That accident raised a question in the mind of State Farm as to whether the expenses and services provided by Palmer were reasonable and necessary for the injuries sustained in the November 1998 automobile accident. Richie Malone ("Malone"), a State Farm Claims Specialist assigned to Pickard's claim, concluded that this was a situation where a "utilization

2

review" of the medical bills and treatment was appropriate.

Sometime in March 1999, upon the request of State Farm, Dr. Charles Brown ("Brown"), a chiropractor in Huntsville, Alabama, and one of State Farm's approved third party "utilization review" vendors, reviewed Pickard's medical reports and charges. Brown concluded that part of the treatment given Pickard by Palmer was medically unnecessary. On April 6, 1999, State Farm informed Palmer of its decision that some of Palmer's bills were not payable because "the level of the amount of care provided (based on the diagnosis) was not substantiated by your report." State Farm determined that only $1,155.00 of Palmer's medical charges, out of a total of $3,200.00, was reasonable and necessary under Pickard's State Farm coverage.

On April 6, 1999, State Farm informed Pickard of its decision to pay a reduced amount of her medical bill. State Farm also wrote Pickard that "[s]hould Dr. Palmer refuse to accept this offer in full settlement of this(ese) statement(s) or pursue any type of legal collection against you for the balance of the bill(s) in question, we will defend and indemnify you at our expense . . ." State Farm remitted $1,155.00 to Palmer, who took the money.

On May 13, 1999, State Farm received a letter from Palmer challenging State Farm's denial of payments with respect to certain of his treatments. More important, however, was Palmer's statement

3

that "[m]y attorney advises me to sue [Pickard] for the balance owed, and in turn, she will have to sue you. I would like to avoid this if possible. Please let me know when I will receive payment in full from your company." On January 11, 2001, Palmer testified that he has not pursued legal action to collect the unpaid balance from Pickard, and has no plan to do so in the future:

> Q: . . . [State Farm] paid part of her bill, correct?
>
> A: They paid part of her bill.
>
> Q: There was approximately two thousand dollars that you were going to look to Ms. Pickard to pay, correct?
>
> A: That is correct.
>
> Q: And have you, in fact, collected that from Ms. Pickard?
>
> A: No, I have not.
>
> Q: Have you instituted any action against Ms. Pickard for that amount?
>
> A: No, I have not.
>
> Q: Have you turned over her account to a collection agency?
>
> A: No, I don't turn accounts over to collection agencies.
>
> * * *
>
> Q: . . . Is it your intent to turn over this file to [your attorneys] to institute some action against Ms. Pickard?

4

A:  No, sir.

Palmer Depo., at 262-63.

On June 2, 2000, Pickard filed a class action complaint in this action against State Farm. On July 17, 2000, State Farm filed a motion to dismiss, or in the alternative, motion for partial summary judgment. On September 18, 2000, the court entered a scheduling order whereby the parties agreed that Pickard's individual claims would be addressed before class discovery was initiated. To date, the parties have engaged in discovery relating solely to Pickard's individual claims.

### Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says: there must be a **genuine** issue of **material** fact, not merely some factual dispute. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at

249, 106 S.Ct. at 2511 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

Defendant's motion for summary judgment should be denied "if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997)(quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)). If, however, as a matter of law, a jury could not return a verdict for plaintiff, defendant's motion must be granted.

### Discussion

Article III, Section 2 of the Constitution of the United States extends the jurisdiction of the federal courts only to "cases and controversies." The moving party must satisfy constitutional standing requirements in order to meet the case or controversy requirement. The Supreme Court has made it clear that a litigant must satisfy three elements in order to have standing: (1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

6

561, 112 S. Ct. 2130, 2136 (1992) (internal citations and quotations omitted). If a litigant has standing, then the case or controversy presents a justiciable question which may be resolved by the court. On the other hand, if the plaintiff does not meet his, her or its burden of establishing each element of standing, then the court is without subject matter jurisdiction to hear the claim.

After reviewing the briefs and extensive supportive materials submitted by the parties, the court finds that Pickard lacks standing. Pickard contends that State Farm has breached her insurance contract by refusing to pay the full amount of her medical bills. Yet, Pickard has failed to show that she personally has been injured by State Farm. As noted above, State Farm paid Palmer $1,155.00, representing funds admittedly due for medical services rendered to Pickard. State Farm denied payment for Palmer's remaining claim based on an independent "utilization review" conducted by Brown as provided by the insurance contract itself. Palmer has not pursued collection of the approximately $2,000.00 he says is due and owing from Pickard, but he has testified that he will not pursue legal action to collect this bill from Pickard in the future despite his earlier written threat to State Farm in which he refers to an unnamed attorney. Moreover, State Farm has indemnified Pickard from any claim against her

7

brought by Palmer, including the cost of a defense. In light of these facts, Pickard has not demonstrated an "injury in fact" (other than those sustained in the motor vehicle accident, itself), and therefore she lacks standing to bring this action on behalf of herself, much less on behalf of others similarly situated, against State Farm. As State Farm correctly points out, it appears that the only way Pickard would suffer an "injury in fact" would be if Palmer should undertake to collect the unpaid balance, and if State Farm breached its indemnity agreement. Neither of these triggering events has occurred. The fact that State Farm reduced the amount payable to Palmer under the contracted for "utilization review" procedure is not a breach of its insurance contract with Pickard.

### Conclusion

A separate and appropriate order in conformity with the foregoing opinion will be entered.

DONE this 28th day of February, 2001.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE